UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

STEVEN DALE MOUNCE

CIVIL ACTION NO.:  12-0669

VERSUS

SECTION:  "I"

JOHN DOE 1, ET AL.

MAGISTRATE:   02

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO RULE 56(b)**
**OF FEDERAL RULES OF CIVIL PROCEDURE**

**MAY IT PLEASE THE COURT:**

**Introduction**

This case is about the level of dental care that a local jail – where the average length of incarceration is measured in months rather than years – _must_ provide to a pre-trial detainee in order to pass constitutional muster pursuant to § 1983.  The plaintiff asserts, contrary to every bit of relevant evidence, that the jail operated under an "extraction-only" dental policy, and that the implementation of this policy in his case resulted in him receiving dental care so inadequate as to "shock the conscience" and thereby violate the Eighth Amendment.  But he is unable to provide sufficient evidence to "clear the bar" set by the applicable law and the defendants' contrary evidence as to either of those allegations.

This matter is set for trial beginning February 24, 2013, approximately two and a half months from now.  The plaintiff has been afforded the opportunity to conduct full discovery, and he has taken the depositions of all of the defendants except Sheriff Strain

and the production of dental records for approximately 100 visits by other inmates.  In addition, the defendants' arguments herein are based largely on the application of legal principles, as opposed to contested factual issues, and are unlikely to be impacted by further discovery.  After this Honorable Court reviews the record of this matter in light of this Motion, including the defendants' supporting argument and evidence, and it notes the total lack of relevant countervailing evidence or argument able to be tendered by the plaintiff, the Court should grant the instant motion and dismiss this suit in its entirety.

### Summary of Pleadings

Plaintiff Steven Dale Mounce brought this lawsuit, based primarily on 42 U.S.C. § 1983, seeking redress for allegedly-inadequate dental care while he was incarcerated at the St. Tammany Parish Jail ("the Jail").  In a nutshell, the plaintiff claims that he was clinically evaluated by both of the dentists providing care to inmates at the Jail and that in each of those instances, the only treatment option provided to him by the dentist was extraction of the problem tooth.

The plaintiff has named five individuals as defendants:

- Rodney J. "Jack" Strain, Jr., ("Sheriff Strain") in his capacity as Sheriff of St. Tammany Parish and statutory "keeper" of the Jail;
- Gregory Longino ("Warden Longino"), a duly-sworn deputy sheriff employed by Sheriff Strain and holding the rank of Major with the St. Tammany Parish Sheriff's Office ("STPSO"), who at all relevant times has served as the Warden of the Jail;
- Richard D. Inglese, M.D., who has been employed by Sheriff Strain and the STPSO since 2004 as the medical director of the Jail, and whose duties include supervision of the Jail's dental-treatment program;
- Ronald S. Leggio, D.D.S., a dentist licensed by the State of Louisiana who provides dental services at the Jail under a professional contract with Sheriff Strain; and

- Gary Bencsek, D.D.S., who is also a Louisiana-licensed dentist providing contract services at the Jail.

The plaintiff's Amended Complaint (Rec. doc.28), which purports to supersede his original *pro-se* complaint, sets out three causes of action against these defendants:

(1)  A claim of deliberate indifference pursuant to § 1983 based on the defendants' "failure" to offer plaintiff any treatment options beyond extraction (*Id.*, at ¶¶ 69-80);

(2)  A second § 1983 claim based on *Monell*-type "policy-and-procedure" liability against the supervisory defendants asserting that the Jail had in place a *de facto* extraction-only policy regarding dental services (*Id.*, at ¶¶ 81-91); and

(3)  A state-law negligence claim against all of the defendants, arising from the same factual scenario (*Id.*, at ¶¶ 92-96).

In the defendants' Answer to the plaintiffs' Amended Complaint, they specifically asserted as a defense to the plaintiffs' claims the doctrine of qualified immunity (Rec. doc. 34, at "Twelfth Defense").  As this Honorable Court is aware, government actors like the defendants in this case are entitled to immunity from liability under § 1983 unless the plaintiff can sufficiently demonstrate deliberate indifference on their part toward the specific and "well-established" constitutional violation alleged by the plaintiff.

### **Grounds for This Motion**

This motion seeks dismissal of all of the plaintiff's causes of action as to all of the defendants.  The defendants' challenges to the plaintiff's two § 1983 causes of action are both firmly grounded in the law of qualified immunity.  But, because the two causes of action are different in scope, the application of qualified immunity to each of them will be slightly different.  The plaintiff's first § 1983 claim is focused on the dental treatment actually provided to him, although it relies on his assertion that the Jail had an extraction-

only dental treatment policy as the purported cause for his alleged defective treatment.  His second § 1983 claim is all about his assertion that the Jail had an extraction-only policy.  In other words, the first claim has to do with _treatment_ and the second claim is about _policy_.

### Summary of Relevant Facts

In connection with the instant motion, the defendants have attached to the motion a Statement of Uncontested Material Facts, as is required by local rule.  The Statement sets out the factual context of the plaintiff's lawsuit and the specific defenses advanced in this Motion.  It is supported by reference to the relevant exhibits, which are also attached to the motion and listed immediately below.  The defendants hereby incorporate by reference their Statement of Uncontested Material Facts, and they refer the Court to that Statement and accompanying exhibits for the factual background necessary to decide this motion.

### Summary Of Supporting Evidence

In support of this motion, the moving defendants submit the following items:

1. Excerpts from the plaintiff's Jail administrative file (Exhibit "A");

2. The plaintiff's Jail dental-care records (Exhibit "B");

3. Transcript of _Spears_ hearing conducted in this matter (Exhibit "C");

4. Excerpts from the transcript of the deposition of Dr. Leggio (Exhibit "D");

5. Excerpts from the transcript of the deposition of Dr. Bencsek (Exhibit "E");

6. Excerpts from the transcript of the deposition of Maj. Longino (Exhibit "F");

7. Affidavit of Dr. Inglese (Exhibit "G");

8. Dr. Leggio's CV (Exhibit "H");

9. Dr. Bencsek's CV (Exhibit "I");

10. Expert Report issued by Kathryn Sturn, D.D.S. (Exhibit "J");

11. Dr. Sturn's CV (Exhibit "K");

12. Portion of Jail Medical Dept.'s Policy and Procedure Manual (Exhibit "L");

13.     Declaration of Thomas Sutherland, D.D.S. (Exhibit "M"); and

14.     List of Off-Site Dental Care provided to STPJ inmates (Exhibit "N").

This documentation, along with the pleadings in this matter, clearly and fully support the facts set out in this Motion and serve to demonstrate that the claims being made herein by the plaintiff are barred by application of the qualified-immunity defense in favor of the defendants and therefore calls for the dismissal of those claims.

**Law and Argument**

*1.  The General Standard for Granting Summary Judgment.*

In considering a motion for summary judgment, this Honorable Court should grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.[1]  As a general rule, the moving party has the initial burden under Rule 56 of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law.[2]

Thus, typically the party moving for summary judgment "bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."[3]  But even under this general rule, the mere existence of some alleged factual dispute between

---

1       Fed.R.Civ.P. 56(c); *see also Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th Cir. 2001), *cert. denied* 535 U.S. 954, 122 S.Ct 1357, 152 L.Ed.2d 353 (2002); *Alfonso-Ferro v. Stolthaven New Orleans, L.L.C.*, 2005 WL 1309133, *2 (E.D.La. 2005)(Vance, J.).

2       *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District,* 349 F.3d 244, 246-47 (5th Cir. 2003).

3       *Adams v. Travelers Indemnity Company of Connecticut*, 465 F.3d 156, 163 (5th Cir. 2006).  *See also Taita Chemical Company, Ltd. v. Westlake Styrene Corporation*, 246 F.3d 377, 385 (5th Cir. 2001).

the parties will not defeat an otherwise proper motion.  Only disputes over facts that might

affect the outcome of the lawsuit under governing law will preclude summary judgment.[4]

Once the mover's initial burden is satisfied, the party opposing summary judgment

must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' and must designate 'specific facts

showing that there is a genuine issue for trial.'"[5]  A fact is material only when it might affect

the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a

reasonable jury could return a verdict for the nonmoving party.[6]

Put another way, the plaintiff in this matter cannot simply rest on the allegations in

his pleadings in the face of a properly-supported and well-reasoned summary judgment

motion; "there is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted."[7]  In

addition, conclusory allegations unsupported by specific facts will not prevent granting of

summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any

significant probative evidence tending to support the complaint.[8]

---

4    *Taita Chemical, supra.  See also Roberts, supra; Condiff v. R.D. Werner Company, Inc.*, 2003 WL
     21977167, *1 (E.D.La. 2003).

5    *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting
     Fed.R.Civ.P. 56(e).  *See also Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *In
     re Ark-La-Tex Timber Company, Inc.*, 482 F.3d 319 (5th Cir. 2007).

6    *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

7    *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), quoting *Anderson v. Liberty Lobby,
     Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  *See also Celotex Corporation*,
     *supra* at 325-26, 106 S.Ct. at 2554.

8    *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010), *cert. denied* --- U.S. ---, 131 S.Ct. 355, 178
     L.Ed.2d 149 (2010); *National Association of Government Employees v. City Public Service Board*, 40
     F.3d 698, 713 (5th Cir. 1994).

In fact, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence in order to rebut a properly-supported summary-judgment motion.[9]  And, once again, conclusory allegations and unsubstantiated assertions by the nonmovant simply are not sufficient.[10]  Since "conclusory allegations" and "unsubstantiated assertions" make up the bulk of the plaintiff's claims in this case, this case is one that is especially ripe for summary judgment.

As the Fifth Circuit has declared on several occasions: "After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."[11]  Mere assertion of a factual dispute unsupported by probative evidence will not prevent summary judgment.[12]  And, once again, factual controversies should be construed in the light most favorable to the nonmovant _only_ if evidence showing that an actual controversy exists has been tendered.[13]

This burden placed on the non-mover to at least offer countervailing evidence in light of a properly-supported motion for summary judgment is a heavy one.  In fact, one court has expressed it rather bluntly:

> When the motion [for summary judgment] is made, we go beyond the paper allegations of the pleadings, which were enough to survive the common law demurrer.  The time has come, as James and Hazard put it, "to put up or shut up."  Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150 (2d

---

9       *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

10      *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

11      *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  *See also Caboni v. General Motors Corporation*, 278 F.3d 448, 451 (5th Cir. 2002); *Texaco Exploration and Production, Inc. v. Amclyde Engineered Products*, 2008 WL 957652, *5 (E.D.La. 2008).

12      *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993).

13      *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998).

ed.1977).  Accordingly, unsupported allegations [by a plaintiff] do not create a material issue of fact.[14]

Summary judgment indeed is time for the plaintiff "to put up or shut up," to tender

legitimate, substantive evidence in support of his position or be prepared to go home.

### 2.  Summary Judgment in the Context of an Assertion of Qualified Immunity.

This general rule regarding summary judgment is even further manifest when

dealing with claims asserted under § 1983 where the defendant raises qualified immunity

as a defense.  As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Cf. Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir.2008).  Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it.  Rather, *it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised.  Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir.2009).  An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir.2005)(citing *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001)).  The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id.*[15]

Thus, in order to prevail on the instant motion, the defendants need not resolve

every possible factual dispute or answer every possible question about the plaintiff's

---

14    *Weinstock v. Columbia University,* 224 F.3d 33, 41 (2nd Cir. 2000), *cert. denied* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003).  *See also Ankum v. White Consolidated. Industries,* 1992 WL 236961, *5 (E.D.La. 1992)("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up or shut up.'  The opposing party then *must* go beyond the pleadings and offer proof of his claim.")(emphasis added).

15    *Tolan v. Cotton,* 854 F. Supp. 2d 444, 463 (S.D. Tex. 2012)(emphasis added), *affirmed* 713 F.3d 299 (5th Cir. 2013).  *See also Rockwell v. Brown,* 664 F.3d 985, 991 (5th Cir. 2011), *cert. denied* --- U.S. ---, 132 S.Ct. 2433, 182 L.Ed.2d 1062 (2012)(in response to defendants' motion for summary judgment"[t]he burden is on the [plaintiffs] to rebut the officers' qualified-immunity defense by establishing a genuine fact issue . . . .").

allegations, particularly in light of their assertion of qualified immunity.  They instead are

required to present, address, and demonstrate only those uncontradicted facts necessary to

defeat an essential element the plaintiff's cause of action or establish a *prima facie* defense,

in light of the analysis discussed below.  Because they clearly can do so in this case, and

because the plaintiff has no relevant evidence to rebut it, the instant motion should be

granted and the plaintiff's suit against the defendants should be dismissed.

### 3. The Defendants Are Entitled To Qualified Immunity As To Plaintiff's First § 1983 Cause Of Action (the "Treatment" Claim).

<u>Qualified Immunity In General</u>

A qualified immunity defense in civil rights litigation "serves to shield a government

official from civil liability for damages based upon the performance of discretionary

functions if the official's acts were objectively reasonable in light of then clearly established

law."[16]  "Qualified immunity balances two important interests – the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment . . . and liability when they perform their duties reasonably."[17]

Unlike most other defenses – where the burden of proof rests on the party asserting

it – "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to

demonstrate the inapplicability of the defense."[18]  In addition, in the face of a defense of

---

16  *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

17  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 681 (E.D. La. 2012)(Feldman, J.).  *See also Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004)(en banc)(discussing the important goals served by the qualified immunity doctrine).

18  *Ramirez, supra*; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  *See also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

qualified immunity, a § 1983 plaintiff must comply with a heightened pleading standard. This heightened pleading standard "requires more than conclusory assertions.  It requires claims of specific conduct and actions giving rise to a constitutional violation."[19] Put in slightly different words, the Fifth Circuit has specifically explained that "conclusory allegations and unsubstantiated assertions" are not sufficient to overcome the qualified immunity defense.[20]  In this case, as already set out above, the _only_ specific constitutional violations asserted by the plaintiff are ones of inadequate medical (dental) care pursuant to the Eighth Amendment.

To discharge these burdens, a plaintiff must satisfy a two-prong test, which after _Pearson v. Callahan_,[21] can be considered in either sequence.  According to the first prong, the plaintiff must adequately establish that the defendant committed a constitutional violation under current law.[22]  This prong can be referred to as the "clearly-established law" prong.  Second, the plaintiff must prove that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the actions complained of occurred.[23]  This prong can be labeled as the "objectively-unreasonable conduct" prong.  This bifurcated legal standard is designed to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs.[24]

---

19   _Burge v. Stalder_, 54 F. Appx. 793 (5th Cir. 2002); 2002 WL 31845179, *3, citing _Baker v. Putnal,_ 75 F.3d 190, 195 (5th Cir.1996).  _See also Harold v. City of New Orleans_, 2008 WL 5216223, *2 (E.D.La. 2008)(Duval, J.).

20   _Miller v. Graham,_ 447 Fed.Appx. 549, 551 (5th Cir. 2011).

21   555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

22   _See, e.g., Wilson v. Layne,_ 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); _Palmer v. Johnson,_ 193 F.3d 346, 351 (5th Cir. 1999).

23   _Atteberry v. Nocona General Hospital_, 430 F.3d 245, 253 (5th Cir. 2005).

24   _See Wilson,_ 526 U.S. at 609.  _See also Ashcroft v. al-Kidd,_ 563 U.S. –––, –––, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)( "Qualified immunity gives government officials breathing room to make

Specifically as to the "clearly-established law" prong, government officials like the defendants in this case are entitled to qualified immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[25]  For qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[26]  Put slightly differently: "The relevant . . . inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[27]

In this matter, the plaintiff has insurmountable problems as to both prongs of the test.  He certainly has failed to offer any specific facts that, on their face, evidence the irrationality or unreasonableness of the treatment provided to him.  Rather, the evidence reflects a full and complete dental-care plan developed by the Jail dentists, a plan that far exceeds the care required by the Constitution.  As a result, his lawsuit against Dr. Leggio and Dr. Bencsek should be dismissed on that basis alone.

<u>Qualified Immunity As To Dental Treatment Claims</u>

First, as to the plaintiff's claims against the dentist-defendants involving his dental treatment, the defendants readily acknowledge that the constitutional rights of a prisoner such as the plaintiff certainly <u>*may*</u> be violated if his serious medical needs are met with

---

reasonable but mistaken judgments about open legal questions [and] protects all but the plainly incompetent or those who knowingly violate the law.")(internal quotation marks omitted).

25   *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davila v. U.S.,* 713 F.3d 248, 257 (5th Cir. 2013).

26   *Johnson v. Johnson,* 385 F.3d 503, 524 (5th Cir.2004)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

27   *Lytle v. Bexar County, Texas*, 560 F.3d 404, 410 (5th Cir. 2009).

deliberate indifference on the part of penal authorities charged with providing such care.[28]

But, as the Fifth Circuit has held:

> Deliberate indifference is an extremely high standard to meet. It is
> indisputable that an incorrect diagnosis by prison medical personnel does
> not suffice to state a claim for deliberate indifference. Rather, the plaintiff
> must show that officials refused to treat him, ignored his complaints,
> intentionally treated him incorrectly, or engaged in any similar conduct that
> would clearly evince a wanton disregard for any serious medical needs.
> Furthermore, *the decision whether to provide additional treatment is a classic
> example of a matter for medical judgment*. And, the failure to alleviate a
> significant risk that the official should have perceived, but did not is
> insufficient to show deliberate indifference.[29]

As the Fifth Circuit has also reiterated:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice
> do not constitute deliberate indifference, nor does a prisoner's disagreement
> with his medical treatment, absent exceptional circumstances. Furthermore,
> the decision whether to provide additional treatment is a classic example of a
> matter for medical judgment.[30]

In addition, the federal constitution does not require that inmates receive optimal

care. The fact that an inmate's medical treatment "may not have been the best money could

buy" is insufficient to establish a federal violation.[31]

In the instant case, it is evident from the plaintiff's own pleadings that his need for

dental treatment was not met with deliberate indifference. To the contrary, the plaintiff

admits that, on three separate occasions, he was examined and/or offered treatment by

either Dr. Leggio or Dr. Bencsek. He does not claim that either dentist is in any way

---

28   *Thompson v. Upshur County, Texas,* 245 F.3d 447, 457 (5th Cir. 2001).

29   *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001)(quotation marks
     and citations omitted)(emphasis added). *See also Lauga v. St. Tammany Parish Sheriff's Office*, 2010
     WL 1559089, *4 (E.D.La. 2010).

30   *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)(footnote and quotation marks omitted).

31   *Mayweather v. Foti,* 958 F.2d 91 (5th Cir.1992); *see also Ventry v. Gusman*, 2012 WL 1405862 (E.D.La.
     2012)(Knowles, M.J.).

unqualified or incompetent.  Even his own dental expert has admitted that she "<u>cannot</u>

determine whether the individual teeth that are discussed in these records were in fact

restorable."  Exhibit "J", at p. 7 (emphasis in original).

Instead, the plaintiff simply disagreed with the STPJ dentists' diagnosis that the

tooth in question should be extracted and then has either misunderstood or fabricated

their statements to him regarding his treatment options as expressing an unwritten

"policy" of extractions-only.  And the fact that Dr. Rutherford examined the plaintiff's teeth

nearly a year later and concluded, without taking an x-ray and despite his opinion of an

80% chance the tooth was beyond saving, that he should offer the plaintiff the option of a

filing in Tooth #2 is simply an example of professional discretion and certainly is not

evidence of deliberate indifference.

The courts have concluded that, generally, such matters of professional medical

judgment are better left to the medical expertise of physicians or dentists rather than to the

legal expertise of judges.  In fact, federal courts are loath to second-guess such medical

decisions in federal civil rights actions.[32]  In summary, the determinative issue here is not

whether the dental treatment offered to the plaintiff was subpar in some respect, or

whether he was dissatisfied with the options presented to him, or whether medical

professionals might differ as to the treatment plan; rather, it is only whether his serious

medical needs were met with _**deliberate indifference**_.  And this is a _**legal**_ standard for this

Court to decide, not a factual issue for a jury.

---

[32]  *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)("Where a prisoner has received some
medical attention and the dispute is over the adequacy of the treatment, federal courts are generally
reluctant to second guess medical judgments and to constitutionalize claims which sound in state
tort law."); *Castro v. Louisiana,* 2008 WL 5169401, at *4 (E.D.La. 2008) ("[M]edical judgments are not
to be lightly second-guessed in a federal civil rights action.").

The plaintiff simply cannot meet his burden of demonstrating either gross incompetence or willful wrongdoing on the part of the dentist defendants. Although the plaintiff asserts that the dentists' actions constituted "deliberate indifference" (Rec. doc. 28, at ¶¶ 74-78), he offers no valid facts whatsoever to support those broad claims. To the contrary, the undisputed relevant facts clearly show that Dr. Leggio and Dr. Bencsek acted in accordance with an objectively reasonable standard.

Not only did these defendants not violate the plaintiff's constitutional rights in their treatment, but they responded to his dental needs in a competent and professional manner. *See* Defendants' Statement of Uncontested Material Facts, at ¶¶ 3-7, 14-17, & 47. A full and complete treatment plan and course of examination were undertaken. The plaintiff might not agree with what was done for purposes of this litigation but the affirmative, active treatment he received were anything but deliberate indifference. Because it is evident that there was no deliberate indifference in this case with respect to plaintiff's dental treatment, the plaintiff "treatment" claim should be dismissed as to Drs. Leggio and Bencsek.

As to the other defendants (Sheriff Strain, Warden Longino, and Dr. Inglese), it is clear from the uncontested facts that none of them had any personal involvement in the plaintiff's actual dental treatment. Rather, the plaintiff's "treatment" claims against Warden Longino and Dr. Inglese are limited to their respective roles in addressing the complaints and grievances submitted by the plaintiff while he was housed at STPJ. Rec. doc. 28, at ¶¶ 72-73. But the plaintiff's cause of action at issue here is not that his complaints and grievances were improperly rejected, but that he received constitutionally-inadequate dental care. The fact that these defendants were aware of his grievances does not make them participants in his dental care. If such were the case, supervisory personnel would be

implicated in every § 1983 suit where those personnel had rejected an inmate's

administrative grievance, and that conclusion is not expressive of the relevant law.[33]

### 4. The Defendants Are Entitled To Qualified Immunity As To Plaintiff's Second § 1983 Cause Of Action (the "Policy" Claim).

<u>Preliminary Considerations</u>

It is well established and beyond legitimate dispute that, as a general rule, there is

no liability on a supervisor's part under the civil rights law, including § 1983, based on a

theory of *respondeat superior*.[34]  Thus, neither Sheriff Strain nor Major Longino nor Dr.

Inglese can be held liable under § 1983 pursuant to a theory of *respondeat superior* or

simply because of their general supervisory authority over the Jail Medical Department in

general or Drs. Bencsek and Leggio specifically.[35]

In a case somewhat similar to this one, although admittedly less factually intense,

another section of this Honorable Court concluded that a prisoner whose § 1983 claim was

based upon a slip-and-fall in the jail shower had failed to establish the necessary "personal

involvement" on the part of the defendant sheriff.[36]  Thus, to the extent that the plaintiff's

claims are based or dependent upon either of the sheriffs' personal involvement in those

allegations, they must fall.

---

[33]    *See*, for example, *Lee v. Rushing*, 530 F. Appx. 315, 317 (5th Cir. 2013), where the court concluded that the defendant sheriff's alleged knowledge of supposedly-inadequate medical care was not enough to trigger a § 1983 claim based on that care.  *See also Sriggens v. LaRavia*, 2012 WL1135845, *7 (E.D.La. 2012) and the cases cited therein.

[34]    *Monell v. Dep't of Social Services of New York City,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir. 1996).

[35]    *Oliver v. Collins*, 902 F.2d 278, 281 (5th Cir. 1990); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert. denied* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).

[36]    *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 550 (E.D.La. 2009).  *See also Lathers v. Nelson Coleman Correctional Center*, 2010 WL 1489903, *5 (E.D.La. 2010).

Of course, as is true with most general rules, this requirement of personal involvement and rejection of vicarious liability is subject to exceptions that should be addressed.  First, it is acknowledged that under § 1983 official-capacity claims (as opposed to individual-capacity claims), an official such as Sheriff Strain, Warden Longino, or Dr. Inglese can be held liable if it can be shown that he had in place "a policy or procedure that caused [the plaintiff's] injury."[37]

But, it is also true that "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[38]  Rather, he must specifically identify the policy or custom that allegedly caused the complained-of deprivation of his constitutional rights.[39]  As explained by the Fifth Circuit:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[40]

### *STPJ's Dental-Care Policy*

In this case, STPJ does maintain a written dental-care policy, as part of the Medical Department's Policy and Procedures Manual (Exhibit "L").  The general policy statement

---

37    *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied* 555 U.S. 813, 129 S.Ct. 42, 172 L.Ed.2d 21 (2008); *Davis v. Evangelist*, 2009 WL 2447897, *6 (E.D.La. 2009).

38    *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993).

39    *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549, 2003 WL 22135637 (5th Cir. 2003); *Carter v. Strain*, 2009 WL 3231826, *2 (E.D.La. 2009).

40    *Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir.1997)(quotation marks, brackets, and citations omitted).

that begins those guidelines declares:

> The St. Tammany Parish Jail offers a wide spectrum of dental services to offenders in order to promote good oral hygiene and address any dental problems that offenders might experience. *Dental services at the jail will NOT be limited to tooth extractions.*

Exhibit "L", at p. 1 (emphasis added).  In Dr. Inglese's affidavit, he identifies a significant number of different dental procedures that are offered and regularly performed in line with this policy.  Exhibit "G", at ¶ 16.  Dr. Inglese has also testified that "inmates whose condition requires oral surgery are sent to an off-site facility, either the LSU interim hospital system or a local oral surgeon" (*id.*, at ¶ 17), and the defendants have provided the plaintiff with a list of inmates who have been provided this service in recent years (Exhibit "N").

The plaintiff's own expert, Dr. Kathryn Sturm, in her review of 116  randomly-selected STPJ dental files provided to the plaintiff pursuant to discovery, noted procedures other than extraction that were being performed on inmates, including temporary fillings, enameloplasties, dental wax, and pain medications.  Exhibit "L", at p. 4.  And, ironically enough, the plaintiff himself received dental care other than an extraction while he at STPJ.  Exhibit "B"; Exhibit "G" at ¶ 29.

Despite this accumulation of undisputed facts to the contrary, the plaintiff asserts – without any supportive evidence – that "[d]efendants Strain, Longino, and Inglese maintained a policy at STPJ dictating that prisoners would only be offered extraction as treatment for any and all dental needs, which caused unconstitutional conditions constituting a substantial risk to the health of STPJ inmates, including [himself]."  Rec. doc. 28, at ¶ 85.  But for the reasons detailed below, the plaintiff cannot, as a matter of law, prevail on this assertion and so this cause of action should also be dismissed.

*Defendants' Three-Fold Argument*

The defendants' argument as to plaintiff's second § 1983 cause of action (the "policy" claim) is three-fold:

1. The STPJ did not have an extraction-only dental policy and any "evidence" to the contrary tendered by the plaintiff is not factually based should be rejected or ignored.

2. Even if the Court concludes that there are sufficient material facts to create a reasonable dispute about the existence of an extraction-only policy, the relevant law does not establish that such a policy would constitute a violation of a right held by the plaintiff in this case pursuant to the Eighth Amendment.

3. Even if the Court should find enough of a contested issue of fact regarding the existence of an extraction-only policy *and* even were it to conclude that the presence of such a policy would be a sufficient violation of a constitutional right pursuant to § 1983, that right certainly has not been "clearly established" in nature and therefore cannot be applied against the defendants.

First, and as already been discussed above, the STPJ did *not* have an extraction-only dental-care policy during the plaintiff's incarceration there.  In addition to the evidence cited and discussed in the previous section, both Dr. Leggio and Dr. Bencsek have testified without qualification that such a policy did not exist.  Exhibit "D", at p 98; Exhibit "E", at pp. 68-69.  The plaintiff's own medical records, in addition to showing that the plaintiff himself received dental services and treatment that were not extractions, also evidences Dr. Inglese's contemporaneous discussion with the plaintiff in which the actual dental policy was explained to him in detail on more than one occasion.  Exhibit "B", at p. 10.

In fact, the only two items of evidence put forward by the plaintiff to support the existence of an extraction-only policy are his own blanket and self-serving statements to

that effect and the unsupported conclusions of his expert witness, Dr. Sturm.  As to the plaintiff's own statements, this Honorable Court certainly is well aware that allegations or affidavits setting forth merely conclusory facts and conclusions of law are insufficient to defeat an otherwise properly-pled motion for summary judgment.[41]

As to Dr. Sturm's conclusions, not only are they so vague, ambiguous, and self-contradictory as to be without effect for that reason alone, but her qualifications and credibility as an expert in this case are virtually non-existent.  For example, she states her opinion that the Jail has "an expected and accepted policy of extractions."  Exhibit "J", at p. 1.  But exactly what does that phrase mean?  It certainly does not support the plaintiff's claim of an extraction-only policy.

Clearly, Dr. Leggio and Dr. Bencsek perform extractions as an "expected and accepted" aspect of their dental practice at the Jail.  But that fact does not reasonably imply an extraction-only policy.  Further, the defendants do not dispute that extractions constitute the lion's share of the treatment they provide.  But as Dr. Inglese explains in his affidavit testimony, there are a number of logical and legitimate reasons for this admitted fact that have nothing whatsoever to do with an extraction-only policy.  Rather than repeat those reasons *in toto* here, the Court is referred to the relevant portion of his affidavit.  Exhibit "G", at ¶ 30.[42]

Then, immediately following Dr. Sturm's declaration of opinion, she summarizes the three "factors" that lead to that opinion:

---

[41]   *McGarry v. Univ. of Mississippi Medical Center*, 355 F. Appx 853, 856 (5th Cir. 2009); *Galindo v. Precision America Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985).

[42]   Dr. Inglese has also provided rational and unrebutted reasons for the difference in the extraction rate at STPJ (80-90%) and the one at RCC (70%), as testified to by Dr. Sutherland (Exhibit "M", at ¶ ??).  Exhibit "G", at ¶ 31.

> (1) the vast *majority* of inmate dental visits I reviewed resulted in an extraction; (2) the only *other treatment options* provided at STPJ besides extractions are minor procedures that are not appropriate to treat all dental concerns; and (3) the records show a lack of treatment options provided to [the plaintiff].

Exhibit "J", at p. 1 (emphases added).  But rather than support the finding of an extraction-only policy, the first two of the factors instead explicitly recognize and acknowledge that treatments other than extractions *are* offered at STPJ!  Dr. Sturm seeks to minimize these other treatments as "minor" or "palliative," but those arguments more properly go to standard-of-care issues about which she plainly is unqualified to opine and that are irrelevant to this case, rather than the factual issue of a possible extraction-only policy.

Regarding Dr. Sturm's third factor, it is based on nothing other than rank speculation on her part that other "treatment options" were appropriate and justified for the plaintiff, although she has no way of knowing whether such an assumption is correct and instead there is a great deal of actual evidence to the contrary.  And, as mentioned above, Dr. Sturm herself admits that she can express no clinical opinion about the tooth in question (Exhibit "J", at pp. 7-8).[43]  She also noted that her conclusion regarding other treatment options is based on a "suggest[ion]" and a "possibility" (*Id.*, at p. 9).  In light of these statements, how can she possible opine with the necessary degree of confidence about "other" treatment options?[44]

Dr. Sturm's complete lack of expertise and credibility in the field of correctional dental care also justifies rejection of her opinion.  She apparently has never practiced dentistry within the context of a correctional facility and report does not exhibit any

---

43      In fact, she clearly has never conducted a dental examination of the plaintiff.

44      For another unmistakable example of the speculative and unscientific nature of Dr. Sturm's conclusions, see *id.*, at p. 3 n. 2.

specialized knowledge or expertise in the field of correctional-facility dental care (Exhibit

"K").[45]  In fact, just the opposite is true: Dr. Inglese's testimony notes that a number of the

statements and conclusions in Dr. Sturm's report clearly demonstrate her lack of

knowledge or expertise in that field.  Exhibit "G", at ¶ 25.  In addition, she never reviewed

the Jail's dental policy and procedures, nor the deposition testimony of the Jail dentists.

Exhibit "J", at p. 3.  Thus, her conclusions should be ignored either because they are not

really relevant to the issues at hand, or because she lacks the necessary qualifications and

expertise to make such conclusions, or for both of those reasons.[46]

The second prong of the defendants' three-fold argument against the plaintiff's

policy cause of action is based on strictly legal grounds.  Even if the Court were to conclude

that there are sufficient material facts to create a reasonable dispute about the existence of

an extraction-only policy, the relevant law just does not establish that such a policy would

constitute a violation of a right held by the plaintiff pursuant to the Eighth Amendment, at

least not under the otherwise uncontested facts of this case.

Certainly, there are some reported cases (all of them outside the Fifth Circuit)

suggestive of a conclusion that an extraction-only dental policy might be enough, even

standing alone, to support a finding of unconstitutional treatment under the Eighth

Amendment.  But an equal or perhaps even greater number of cases challenge such a

conclusion.  In fact, a recent decision out of the District of North Dakota that was affirmed

by the Eighth Circuit provides an instructive summary of this jurisprudence:

---

45      "Prisoners generally have more extensive dental problems than the average citizen."  *Ramos v. Lamm*,
        639 F.2d 559, 576 (10th Cir. 1980).

46      This Honorable Court certainly need not be reminded of its *Daubert* "gate-keeping" responsible in
        regards to expert testimony.  Along these lines, the defendants anticipate filing a *Daubert* motion
        challenging the admission of Dr. Sturm's testimony in this matter.

[S]ome courts have suggested that "extraction only" policies might violate the Eighth Amendment in certain circumstances, such as when they are motivated by reasons other than sound medical judgment, or have concluded that the issue is an open one.  *See, e.g., Stack v. McCotter,* 79 Fed. App'x 383, 389.4 (10th Cir.2003); *Chance v. Armstrong,* 143 F.3d 698, 703–04 (2d Cir.1998); *Mitchell v. Liberty,* No. 8–341–B–W, 2009 WL 33435, at * *4–5 (D.Me.2009); *Heitman v. Gabriel,* 524 F.Supp. 622, 627 (W.D.Mo.1981).  Other courts, however, have held that prisoners have no Eighth Amendment right to tooth restoration over extraction -- at least when extraction will resolve the underlying dental problem and not seriously compromise the prisoner's health.  *See, e.g., James v. Pennsylvania Dept. of Corrections,* 230 Fed.Appx. 195, 2007 WL 1231730, * 1–2 (3d Cir.2007) (unpublished *per curiam* decision); *Koon v. Udah,* No. 8:06–2000, 2008 WL 724041, at *7 (D.S.C. Mar. 17, 2008); *Wilkens v. Ward,* No. Civ–05–254–M, 2007 WL 2407082, at *6–7 (W.D.Okla. Aug. 22, 2007); *Del Muro v. Fed. Bureau of Prisons,* No. 5:03–CV– 214–B, 2004 WL 1542216, at * 3–4 (N.D.Tex. July 8, 2004); *Kopera v. Cook Cnty. Bd. of Com'rs,* 1994 WL 577238, No. 93–C–3934, at *5 (N.D.Ill. Oct. 18, 1994); *see also Brathwaite v. Corr. Med. Servs.,* 630 F.Supp.2d 413 (D.Del.2009).

The Eighth Circuit has yet to explicitly weigh in on this issue. . . . In *Davis v. Norris,* the Eighth Circuit affirmed the dismissal of an inmate's claim that jail staff had exhibited deliberate indifference to his serious dental needs by denying him a root canal, stating that a disagreement over a particular type of treatment did not give rise to an Eighth Amendment claim.  *Davis v.. Norris,* 198 F.3d 249 (Table), 1999 WL 1006437, at * 1 (8th Cir.1999).  However, in that case, there were competing recommendations from two dentists.  One dentist had recommended a root canal and another extraction.  Arguably, the case did not involve a situation where restoration clearly would have been a preferred course of treatment by practicing dentists, but was not available because of an extraction-only policy.

More recently, in *Meuir v. Greene County Jail Employees,* 487 F.3d 1115 (8th Cir.2007), an inmate sought injunctive relief seeking to end a county jail's unwritten extraction-only policy on the grounds that it violated the Eighth Amendment.  Rather than stating that the inmate had no Eighth Amendment claim as a matter of law, the Eighth Circuit disposed of the challenge to the extraction-only policy based on a lack of standing.  The court observed that the inmate had been transferred to another facility where his dental ailments had been treated without complaint.[47]

---

[47]     *Gaede v. Podrebarac*, 2011 WL 7111453, *6-7 (N.D.N. 2011), *report and recommendation adopted* 2012 WL 259965 (N.D.N. 2012), *affirmed* 499 F. Appx. 637 (8th Cir. 2013).  *See also Daugherty v. Luong*, 485 Fed.Appx. 696 (5th Cir. 2012), where the court rejected plaintiff's Eighth Amendment that he was medically entitled to dentures but deprived of them because of prison policy.

Here, there is no question but that the recommended extraction would have "resolve[d] the [plaintiff's] underlying dental problem," nor is there any evidence that it would have "*seriously* compromise[d] the prisoner's health."  In addition, both dentists who examined the plaintiff at the time recommended extraction; the only contrary evidence is the plaintiff's own bald disagreement.  Thus, even if that narrow category of cases that have opened the door to an extraction-only policy being violative of the Eighth Amendment were applied here, the particular facts of this case clearly would not support such a finding.

Finally, the third prong of the defendants' three-fold argument is also founded in legal reasoning.  Even if the Court should find enough of a contested issue of fact regarding the existence of an extraction-only policy *and* even were it to conclude that the presence of such a policy would be a sufficient violation of a constitutional right pursuant to § 1983, that right certainly has not been "clearly established" in nature and therefore cannot be applied against the defendants.

As part of the two-pronged *Pearson v. Callahan* test regarding qualified immunity discussed above at page 10, the courts "consider an official's conduct to be objectively reasonable [and thereby subject to qualified immunity] unless *all* reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution."[48]  Thus, in response to the defendants' assertion of qualified immunity, part of the plaintiff's burden is to show either that the defendants knew (subjective) or that all officers in their position should have known (objective) that their conduct was violative of the plaintiff's constitutional right of adequate health care.  But how could the defendants

---

[48]    *Gates v. Texas Department of Protective & Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008) (emphasis added).  *See also Hamilton v. Oktibbeha County Sheriff Department*, 480 F.3d 358, 363 (5th Cir. 2007).

have known to take into account the alleged unconstitutionality of an extraction-only policy when the law, as discussed just above, does not clearly establish such a standard?   If reasonable public officials could differ as to whether a defendant's actions were lawful, the defendant is entitled to immunity, even if the defendant's conduct actually did violate the plaintiff's constitutional rights.[49]

Since the relevant jurisprudence is at very best unresolved on this issue, the plaintiff cannot, as a matter of law, demonstrate the violation of a clearly established constitutional right arising out of the alleged extraction-only policy.[50]  In other words, the defendants cannot be held to have known a rule of law and then ignored it if the relevant appellate courts have not yet addressed and defined it.

### 5.  Plaintiff's State-Law Claims

The state-law claims for negligence asserted by the plaintiff in this matter should also be dismissed.  According to Louisiana law, all claims of medical negligence, including dental care, must be submitted to a Medical Review Panel before the claimants have standing to file a civil suit.[51]  Since the plaintiff has offered no evidence that he has done so, his derivative state-law cause of action is without merit.

In the strictest of alternatives, the plaintiff's state-law claims should be dismissed because, once his federal-law claims have been rejected, no grounds for federal-court jurisdiction in this matter would remain.

---

49     *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 408 (5th Cir. 2007); *Pfannstiel v.  City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

50     *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir.), *cert. denied*, 528 U.S. 1022, 120 S.Ct. 533, 145 L.Ed.2d 413, 1999 WL 812948 (1999).

51     LSA-R.S. 40:1299.41 *et seq.*

## Conclusion

For the clear and uncontroverted (if also somewhat lengthy) reasons set out above, the plaintiff's assertion of claims against the defendants pursuant to 42 U.S.C. § 1983 is barred by application of the qualified-immunity doctrine.  And since § 1983 is the only basis for federal jurisdiction in this case, his state-law claims should also be dismissed. Thus, the defendants request this Honorable Court to grant their Motion for Summary Judgment, for the specific grounds urged herein, and dismiss plaintiff's suit against them, with prejudice as to all federal causes of action and at plaintiff's cost.

Respectfully submitted:

**TALLEY, ANTHONY, HUGHES & KNIGHT, L.L.C.**

BY:___/s/ Gary L. Hanes_____
 CHARLES M. HUGHES, JR. (#14382)(T.A.)
 GARY L. HANES  (#14341)
2250 7th Street
Mandeville, LA  70471
Phone: (985) 624-5010
Facsimile: (985) 624-5306
Email: gary.hanes@talleyanthony.com

Attorneys for Defendants/Movers
Rodney J. "Jack" Strain, Jr., in his capacity
as Sheriff of St. Tammany Parish; Major
Gregory Longino; R. Demaree Inglese,
M.D.; Ronald S. Leggio, D.D.S.; and Gary
Bencsek, D.D.S.

### CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record (there being no unrepresented parties) by operation of the court's electronic filing system.

   __/s/ Gary L. Hanes_____
      GARY L. HANES